John R. LANE, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 681S160.

Supreme Court of Indiana.

March 2, 1983.

Raymond C. Sufana, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, John R. Lane, was convicted by a jury of murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.) and was sentenced to the Indiana Department of Correction for a period of forty-five years. He raises the following seven issues in this direct appeal:

1. Whether the court erred in admitting the identification testimony of one of the state's witnesses;

2. Whether the court erred in admitting into evidence a "mug shot" from a photographic array;

3. Whether it was error to admit a gun and an ammunition clip into evidence;

4. Whether it was error to admit certain business records regarding the sale of ammunition to defendant;

5. Whether it was error to give an instruction to the jury regarding flight;

6. Whether there was sufficient evidence to sustain the jury's verdict; and

7. Whether the court properly denied defendant's motion for mistrial based on an improper comment of the prosecutor during his closing argument.

A brief summary of the facts from the record most favorable to the state shows that late in the evening of July 25, 1980, Steve Shaeffer and his girlfriend, Anita Brown, were walking along a street in Cedar Lake, Indiana. A silver Camaro automobile drove by, then turned around and pulled up beside them. Shaeffer leaned down to say something to the person in the passenger seat and was fatally shot in the stomach. Brown was standing next to Shaeffer when he was shot and was able to see the face of the person who shot him. She described this person to police as a young man with shoulder length, dark brown hair, a mustache and a "straggly" beard. Two days after the crime Brown picked defendant's picture out of a photographic array and identified him as the man who shot Shaeffer. Two witnesses testified that they were following the Camaro at the time of this incident because they knew it was defendant's car and they were on their way to his house. They saw the shot come out of the Camaro and positively identified the car as defendant's car.

Other evidence established that defendant's gun was the murder weapon and defendant had purchased ammunition for it two days prior to the crime. Another witness testified that he saw defendant in his car near the scene of the crime a few minutes before the shooting. Two other witnesses testified that defendant admitted to them that he shot Shaeffer. Defendant testified in his own behalf and stated that he was not the person who shot Shaeffer but that it was his father.

I.

Defendant first contends that the trial court erred in denying his motion to suppress evidence of the out-of-court identification made by Anita Brown. It does not appear that defendant also moved to suppress Brown's in-court identification, although he now asserts that this identification was tainted by the allegedly impermissible suggestivity of the pretrial procedure.

The record shows that Brown participated in two pretrial identification sessions. The first involved a photographic array Brown viewed at the police station two days after the shooting. She was shown a large piece of cardboard on which six photographs had been attached. The police officer who conducted this session testified that Brown was not told that any suspect's picture was on the cardboard. Brown selected defendant's picture "after a couple of seconds" on the basis of his face, eyes and

hair. Defendant now makes the vague allegation that since Brown was able to select defendant's picture so quickly there must have been some unduly suggestive indication made to her by the police officers. We find no merit to this contention. Defendant does not claim that the content of the photographs was unduly suggestive and has not included the actual photographs in the record. Likewise, he does not point to any specific words or questions which were used during this session that would render it impermissibly suggestive.

■ It is well settled that the practice of exhibiting a number of photographs to a witness of a crime for the purpose of seeking the identity of the perpetrator is not, as a general proposition, an impermissible investigative method. *Head v. State,* (1982) Ind., 443 N.E.2d 44; *Wilson v. State,* (1981) Ind., 418 N.E.2d 1150. It is only when the display is accompanied by verbal communications or includes graphic characteristics which distinguish and emphasize a defendant's photograph in an unduly suggestive manner that the procedure is condemned as violative of due process. *Head v. State, supra; Parker v. State,* (1981) Ind., 415 N.E.2d 709.

■ The record here does not demonstrate any procedures used by the police which would have increased the dangers of suggestivity. Rather, the obvious inference is that since the witness viewed the perpetrator of the crime at very close range for several seconds she had formed a strong impression of his face and thus was able to quickly select defendant's picture from the array. We find no evidence of unnecessarily suggestive procedures in this photographic identification and no error in its admission.

■ Brown also participated in a pretrial lineup session four days before the trial. At this time, defendant had shaved his mustache and cleaned up his appearance. The record shows that Brown selected another individual from the lineup and not defendant. There is no evidence of any suggestivity or undue influence at the time of the lineup. Defendant's appearance at this time had changed, and the individual Brown selected from the lineup looked similar to defendant. Any inconsistencies or discrepancies arising from Brown's two pretrial identification sessions affect the weight and credibility to be accorded the in-court identification not its admissibility. *Head v. State, supra; Cobb v. State,* (1980) Ind., 412 N.E.2d 728; *Fields v. State,* (1975) 263 Ind. 550, 333 N.E.2d 742. We find no evidence here of any identification procedures which were so suggestive as to give rise to a substantial likelihood of misidentification at the trial so as to violate defendant's due process rights. There was no error in the admission of the identification testimony.

## II.

Defendant next asserts that the trial court erred when it permitted the state to introduce a "mug shot" of defendant into evidence, thereby indicating to the jury that defendant had a prior criminal record. The "mug shot" was admitted over defendant's objection as part of the photographic array in which Brown made her initial identification of defendant.

■ It is well settled in Indiana that "mug shots" are generally inadmissible because of their potential prejudice to defendants when the photographs tend to prove or imply that a defendant has a criminal record. In order for a "mug shot" to be admissible, the state must show that the photograph is not unduly prejudicial and that it has substantial evidentiary value independent of other evidence. *Head v. State, supra; Strong v. State,* (1982) Ind., 435 N.E.2d 969; *Gray v. State,* (1978) 268 Ind. 177, 374 N.E.2d 518.

■ In this case, while the actual photograph was not included in the record, the testimony shows that the state had covered part of the picture and there were no markings showing on it to indicate it was from a police agency. The photograph was relevant in this case to show how defendant's appearance had changed between the time of the identification and the time of trial.

We find no error in the admission of this photograph since it was not unduly prejudicial and had substantial evidentiary value independent of other evidence.

## III.

■ Defendant next contends that the trial court erred in admitting a gun and ammunition clip into evidence over his objections of irrelevancy and lack of chain of custody. We find no merit to this contention. The evidence established that the fatal shot had been fired from this gun, and that the gun was found about ten feet from the road down which the silver Camaro had been driven after the shooting had occurred. Defendant testified that the gun was his, had been in his possession on the day of the instant crime, and that he had purchased the ammunition for it. The evidence was clearly relevant and our decisions do not require a strict showing of the chain of custody where the exhibits are nonfungible and witnesses identify them. *Ives v. State,* (1981) Ind., 418 N.E.2d 220; *Brown v. State,* (1981) Ind., 417 N.E.2d 333; *Lucas v. State,* (1980) Ind., 413 N.E.2d 578.

## IV.

■ Defendant next asserts that certain business records showing that he purchased .32 caliber ammunition two days before the shooting were erroneously admitted. He concedes that the trial court correctly ruled that the records properly met the business records exception to the hearsay rule, but now he argues that the records were irrelevant because there was no evidence showing that the ammunition was used in the commission of this crime. The question of irrelevancy is not before us here as defendant did not object on this basis at the trial and has therefore waived this issue. *Brown v. State, supra; Strickland v. State,* (1977) 265 Ind. 664, 359 N.E.2d 244; *Gradison v. State,* (1973) 260 Ind. 688, 300 N.E.2d 67.

## V.

■ Defendant next argues that the evidence was insufficient to support the trial court's giving of an instruction on flight. The record shows that there was evidence here that defendant and his companions drove quickly away from the scene of the crime and that defendant did not return to his home after the shooting. He apparently met his friends at various locations along the toll road and was finally arrested in Lansing, Illinois, about two weeks later. It is well settled that a court must determine the applicability of giving an instruction on flight by considering all reasonable inferences which might be drawn from the evidence. *Frasier v. State,* (1974) 262 Ind. 59, 312 N.E.2d 77, *cert. denied* 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 686; *Turner v. State,* (1970) 255 Ind. 427, 265 N.E.2d 11. There was sufficient evidence in this case to support the giving of the instruction on flight.

## VI.

Defendant further argues that there was insufficient evidence of his identity as the perpetrator of the crime to support the verdict of the jury. Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Brown v. State,* (1982) Ind., 442 N.E.2d 1109; *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Wofford v. State,* (1979) Ind., 394 N.E.2d 100.

■ In this case, there were both circumstantial evidence and direct eyewitness identification to connect defendant to the crime. The evidence showed that defendant's silver Camaro was the car from which the fatal shot was fired. Defendant owned the murder weapon and ammunition to fit it. Two witnesses testified that defendant admitted to them he had shot Shaeffer. Anita Brown, who was an eyewitness to the shooting, identified defendant at the trial

and had selected his photograph from a photographic array two days after the crime. The testimony of a single witness can be sufficient to sustain a conviction; any discrepancies in the identification testimony go to the weight and credibility of the witness which is to be determined by the jury. *Hill v. State,* (1979) Ind., 394 N.E.2d 132. There was sufficient, substantial evidence of probative value to support the jury's verdict.

## VII.

Defendant finally alleges that the trial court erred in denying his motion for mistrial which he made after the prosecutor made an allegedly prejudicial remark during his closing argument. The record shows that during the state's closing argument, the prosecutor commented about portions of defendant's closing argument and about Anita Brown's identification of defendant at the trial and at the photographic identification session. He then said:

> "I noticed Mr. Jablonski did not say she [Brown] knew [defendant] as his own client testified. Even he couldn't go along with that."

After defendant objected that this statement was only personal belief, the trial court admonished the jury to disregard that portion of the statement.

It is well settled in Indiana that the trial judge who initially rules on a motion for mistrial is in a more advantageous position than a reviewing court to determine the impact of any allegedly prejudicial comments and, therefore, we give the trial court significant discretion in its ruling. The refusal to grant a mistrial will be error only where the defendant has been placed in a position of grave peril to which he should not have been subjected. *Darnell v. State,* (1982) Ind., 435 N.E.2d 250; *Chandler v. State,* (1981) Ind., 419 N.E.2d 142; *Stacker v. State,* (1976) 264 Ind. 692, 348 N.E.2d 648. From reviewing the record and the closing arguments as a whole, we find the admonishment of the jury properly corrected any error, and there was no abuse of discretion here.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.