Chance D. GERRICK, Appellant,

v.

STATE of Indiana, Appellee.

No. 481S105.

Supreme Court of Indiana.

July 27, 1983.

Susan K. Carpenter, Public Defender, Jay R. Rodia, Deputy Public Defender, Carolyn Fitch, Research Asst., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant, a juvenile, was arrested and placed in detention in the Ripley County Jail. Thereafter the Ripley Circuit Court, sitting as a juvenile court, waived its jurisdiction in the matter. The two-count information was filed in Ripley Circuit Court charging appellant with one count of Murder and one count of Robbery. After a change of venue appellant was tried before a jury in Jefferson Circuit Court and found guilty on both counts. He was sentenced to a forty year term of imprisonment.

The facts are these. At about 8:30 A.M. on March 12, 1980, Buzz Lohrum, owner of a service station situated on U.S. Highway 50 in Elrod, was in the back room of the station with Noah Risinger, a cousin who worked the station with him. The pair heard the bells ring that indicated a vehicle had just pulled into the station for service, and Risinger went outside to wait on the customer. Shortly thereafter Lohrum heard what he thought sounded like gunshots and heard a faint voice calling his name. He emerged to find Risinger lying

on the ground near the front door of the station. Risinger managed to communicate to Lohrum that he had written the license plate number of a van from which an assailant had emerged on a piece of paper in his shirt pocket. Lohrum took the paper and called police who began an immediate search for a vehicle matching the description they had been given. Risinger later died of two gunshot wounds to the back.

Indiana State Trooper Jesse Westmeyer spotted a van heading west on Highway 50 matching this description as he and Ripley County Sheriff Ken Lovins were driving east on the highway from Versailles to Elrod. They turned around and pursued the van. Westmeyer testified he saw the van stop, whereupon he observed a black male jump from the passenger door and hide behind a nearby house trailer. The officers went to the trailer, and appellant was apprehended. A .22 caliber revolver with two spent rounds was taken from appellant by Lovins.

As he was being handcuffed, appellant blurted out, "I didn't shoot the dude. Jesse Smith did." Subsequent police investigation showed there was a Jesse Smith living in Cincinnati who was charged with a drug offense in the Cincinnati court system, but the person of this nor any other "Jesse Smith" was apparently never seized or questioned in connection with this offense. Cellmates of appellant in the Ripley County Jail testified appellant told them he had picked up a hitchhiker while driving from Dayton, Ohio, into Indiana and that this man was the one who committed the charged crimes. Both testified appellant told them the hitchhiker forced appellant to let him out of the van shortly before he was apprehended.

Several witnesses testified as to their observations of a van traveling west on Highway 50 between 8:30 and 9:00 A.M. on March 12, 1980. They testified the van matched the description of the van Trooper Westmeyer and Sheriff Lovins followed and later saw appellant emerge from. All but one were able to state the van was being driven by a young black male and that they

saw no one else in the vehicle. One witness was able to identify appellant in court as the driver of the van. Another witness testified that as she drove past the service station she saw a black male pumping gas into a van and saw a white man coming from the back of the station toward the van. Another witness testified he lived along Highway 50 in Versailles and that at near 9:00 A.M. he saw a van parked in his barnyard with appellant standing near it. He testified appellant told him he had to relieve himself in some nearby woods and apologized for driving into the man's yard. The witness testified he then showed appellant how to drive out of the yard.

A state police technician who conducted ballistics tests on the revolver taken from appellant testified he was unable to say the .22 caliber revolver was the murder weapon due to the poor quality of the gun and the mutilation of the bullet fragments taken from the decedent's body to which he attempted to match test bullets fired from the gun.

Appellant contends there is insufficient evidence in the record as presented in the waiver hearing, held April 9, 1980, in support of the juvenile court's finding that "the safety and welfare of the community . . . require that Chance D. Gerrick not remain in the juvenile justice system and further require that juvenile jurisdiction be waived . . . ." He points out under I.C. § 31–6–2–4(c) and (d) the decision whether to retain juvenile jurisdiction or waive a juvenile into a court with criminal jurisdiction over adults requires a balancing of the best interests of the child against the safety and general welfare interests of society. He asserts given the testimony in the waiver hearing by two witnesses that in their opinion it was in his best interests that he be retained in the juvenile system, the court erred in finding that jurisdiction should be waived.

It has been held the waiver order in such a case must not merely recite statutory language. Support in reason and fact for waiver must appear in either the face of the waiver order or in the record of the

waiver hearing. *In the Matter of Tacy,* (1981) Ind.App., 427 N.E.2d 919. *See also Strosnider v. State,* (1981) Ind.App., 422 N.E.2d 1325. Also, a presumption in favor of waiver operates under I.C. § 31–6–2–4(c) when the juvenile is charged with what would be murder if committed by an adult. *Trotter v. State,* (1981) Ind., 429 N.E.2d 637. The juvenile court in holding the waiver hearing is not compelled to give overriding weight to testimony that supports a finding the juvenile should remain in the juvenile system. *Id.* We will reverse the juvenile court's determination only for abuse of discretion. *Id.*

■ We find factual support for the court's waiver order in both the record of the waiver hearing and on the face of the waiver order itself. The evidence adduced in the waiver hearing showed appellant had committed several crimes in Ohio and had been taken into the juvenile system there. The evidence tended to show this had not prevented appellant from traveling to Indiana on the morning of March 12, 1980, and murdering Noah Risinger while perpetrating a robbery. This is reflected also on the face of the waiver order in the court's finding. The court was not required to accept as dispositive of the issue the statement of opinion of any witness that it was in appellant's best interests that he not be waived into adult court. *Trotter, supra.*

■ In a related claim as to sufficiency of the evidence in support of waiver, appellant claims the juvenile court's decision cannot stand because of the State's failure to present evidence that the dispositional alternatives available within the juvenile system were inadequate.

We do not agree. The State's offering of evidence to show the welfare and safety of society require waiving appellant into the adult criminal justice system inherently tended to rebut whatever evidence appellant offered with regard to the desirability of retaining him in the juvenile system. It is for the juvenile court judge, weighing the effect and result of following one alternative against the other, to determine which is the more desirable alternative.

We hold there was no abuse of discretion in this case in reaching a determination that appellant should be waived into the adult criminal justice system.

■ Appellant claims error in regard to the waiver procedure used in this case in that the State was not required to present any evidence as to the requirement of I.C. § 31–6–2–4(c)(2) that the court must find probable cause to believe the child has committed an act chargeable as a murder if committed by an adult.

Appellant's contention is the trial court erred when he "incorporated by reference" his finding of March 18, 1980, that there was probable cause to believe appellant murdered Noah Risinger and also committed a robbery. This finding was based on the evidence adduced in the March 13, 1980, hearing in juvenile court to determine whether to continue appellant's detention after his arrest the day before.

It can be fairly concluded from a reading of several statutes that following the arrest of a juvenile on the basis of a probable cause belief that he has committed murder or what would be a Class A or B felony if committed by an adult, *see* I.C. § 31–6–4–4(b) [Burns 1980 Repl.]; there is to be a preliminary inquiry by the intake officer of the juvenile court, *see* I.C. § 31–6–4–7 [Burns 1980 Repl.]; a request by the prosecutor to the court for authorization to file a petition alleging delinquency, *see* I.C. § 31–6–4–9(a) [Burns 1980 Repl.]; a determination on whether to continue the juvenile's detention, *see* I.C. § 31–6–4–5 [Burns 1980 Repl.]; an order of the court authorizing the filing of a petition following a hearing on that issue alone, *see* I.C. § 31–6–4–9 [Burns 1980 Repl.]; the filing of the petition itself by the prosecutor; and another hearing on the matter of whether or not the child is delinquent, *see* I.C. § 31–6–4–13 [Burns 1980 Repl.]. All this precedes the holding of the hearing to determine whether to waive the juvenile into the adult criminal justice system under I.C. § 31–6–2–4. There is a probable cause showing required at these proceedings. In I.C. § 31–6–4–9(b)

governing the prosecutor's request for authorization to file a petition alleging delinquency, we find: "The juvenile court shall consider the preliminary inquiry and the evidence of probable cause. The court shall authorize the filing of the petition if it finds probable cause to believe that the child is a delinquent child . . . ." Also, I.C. § 31–6–4–5(g), governing the determination as to whether to continue a juvenile's detention, states in part: "[T]he court may order the child detained if it finds probable cause to believe the child is a delinquent child . . . ."

Appellant's argument is that, notwithstanding the juvenile court's prior determinations, the State is nonetheless required to again show the existence of probable cause as required in I.C. § 31–6–2–4(c)(2) in order to enable the juvenile court to make a valid waiver. He also argues the rights of confrontation and cross-examination of witnesses as guaranteed under I.C. § 31–6–3–1 are effectively negated when, as in this case, the juvenile court does not require the prosecutor to reintroduce evidence to support the element for waiver of probable cause to believe the child committed the charged act.

The State points out the showing of probable cause was made at the hearing to determine whether to continue his detention and that at that time appellant was represented by the same attorney who represented him at the waiver hearing. The State also asserts appellant has failed to show how the procedural error, if any, caused him prejudice or harm. The State points out where the purpose and intent of a procedural statute have been satisfied, a technical error of noncompliance with the statute is not reversible error absent a showing of prejudice or harm. *Kindred v. State,* (1977) 173 Ind.App. 624, 365 N.E.2d 776.

We agree with the State. Appellant has not suggested how this procedural error has harmed him. We believe it would be the better practice in these cases to require the State to again present evidence of probable cause at the waiver hearing, even though it

may be the same evidence as was introduced at an earlier hearing. However, the court's act in this case did not prevent the defendant from presenting his own evidence at the waiver hearing that might serve to negate a probable cause showing.

A trial court may take judicial notice of proceedings that have taken place in that court and in that cause of action. *See, e.g., Mitchell v. Godsey,* (1944) 222 Ind. 527, 53 N.E.2d 150; *In re Marriage of Lopp,* (1977) 173 Ind.App. 74, 362 N.E.2d 492; *Halbert v. Hendrix,* (1950) 121 Ind.App. 43, 95 N.E.2d 221. We construe the judge's act of "incorporating by reference" into his waiver hearing the finding of probable cause made at the former hearing to be the same as taking judicial notice of a prior proceeding in the same court and the same cause of action.

■ Appellant claims the juvenile court's waiver order cannot be upheld due to the alleged failure of the State to comply with the requirements of I.C. § 31–6–4–5(c), (d), (e), and (f). We have already identified this statute as the source of the requirement that a hearing be held promptly after a juvenile is taken into custody to determine whether to continue his detention until a determination that the child is or is not delinquent can be made. Appellant's claim is that because of noncompliance with the statute the juvenile court never acquired jurisdiction over him, and consequently there was no jurisdiction to be waived into the adult criminal court. *See Summers v. State,* (1967) 248 Ind. 551, 230 N.E.2d 320.

We find that I.C. § 31–6–4–5 is not a jurisdictional statute, therefore failure to comply with any or even all parts of it does not cause the juvenile court to lose jurisdiction over the child. The Statute only relates to the ability of the juvenile court to continue the detention of the child previously taken into custody under I.C. § 31–6–4–4.

Reading the juvenile statute in its entirety, it is clear the juvenile court's jurisdiction over a child attaches as soon as the child has been taken into custody by a law enforcement officer who is acting with probable cause to believe the child has com-

mitted an act that would be a felony if committed by an adult. In this case that occurred shortly after 9:00 A.M. on the morning of March 12, 1980, when Trooper Westmeyer and Sheriff Lovins arrested appellant. At a subsequent proceeding held under I.C. § 31–6–4–5 the only issue to be determined is whether to continue in the child's detention. The juvenile court's jurisdiction over him, however, has by that time already attached and cannot be lost by failure to conduct the detention hearing in a proper manner.

In *In the Matter of Tacy, supra,* the Court of Appeals stated the failure to release the juvenile when no hearing on detention was held within forty-eight hours as required under I.C. § 31–6–4–5(f) "does not mean the court loses jurisdiction . . . ." 427 N.E.2d at 921. This observation is applicable to noncompliance with any or all of I.C. § 31–6–4–5, not just subsection (f).

■ Appellant claims the juvenile court erred when at the March 13 detention hearing witness Buzz Lohrum was permitted over his objection to testify as to what Noah Risinger said to him when Lohrum emerged from the back of the station to find Risinger lying on the ground. The statement by Risinger which Lohrum recited before the court was, "Now, Buzz, I've been shot in the back by a young nigger, driving a blue van with Ohio plates." Appellant objects that this testimony was hearsay.

However, as the State points out, a well-known exception to the hearsay rule is the "dying declaration." A statement that would otherwise be hearsay is admissible as a dying declaration if it is shown that the declarant knew death was certain or had given up all hope of recovery. *Dean v. State,* (1982) Ind., 432 N.E.2d 40; *Hoskins v. State,* (1978) 268 Ind. 290, 375 N.E.2d 191.

Shortly after making the statement in question, Risinger told Lohrum that he was dying. This statement was made at a time when the decedent knew he had been shot twice in the back and that he could not move his arms. Considering all the circumstances surrounding the making of the

statement, the evidence is sufficient to support the judge's ruling that the statement was admissible under the dying declaration exception to the hearsay rule.

■ Appellant claims the trial court erred when during the detention hearing Lohrum was allowed to testify as to his opinions on subjects about which he was not qualified to testify as either an expert or lay witness. Lohrum testified he heard two sounds that sounded to him like gunshots. He also testified that when Risinger tried to reach into his shirt pocket to get the piece of paper on which he had written the van license number, he could not do so because he was "paralyzed."

Appellant contends Lohrum did not have sufficient knowledge of facts on which to base his opinion as a lay witness that the sounds he heard were gunshots. In this situation Lohrum's testimony was akin to a statement of opinion as to an issue of ultimate fact. Witnesses are generally permitted to offer opinions about matters of ultimate fact, and a trial court's ruling allowing them to do so is reviewable only for abuse of discretion. *Shelby v. State,* (1981) Ind., 428 N.E.2d 1241. In this case it is difficult to see how the judge can be said to have abused his discretion in allowing the witness to supplement his description of a sound he heard by comparing it to a gunshot. We hold there was no abuse of discretion in admitting the testimony of Lohrum that the sounds he heard sounded like gunshots.

As to Lohrum's remark that Risinger was "paralyzed," appellant's objection is that Lohrum was not shown to be an expert medical witness and was thus improperly allowed to testify as to a matter about which only one so qualified by virtue of his knowledge, experience, training, or education could testify. *See, e.g., Niehaus v. State,* (1977) 265 Ind. 655, 359 N.E.2d 513.

We see no problem with the admission of this testimony. Given the context in which it was offered and the purpose for which it was offered, this was not a situation in which the subject matter attested to re-

quired expert testimony. A relatively insignificant part of this story was Lohrum's recitation that he took the paper from Risinger's pocket because the latter was unable to move his arms. The term "paralyzed," though in the medical community may involve considerations far beyond the ability of the ordinary layman to understand, also has a common and well understood meaning to the ordinary man, that one is to some degree unable to move his limbs. The witness' use of the word "paralyzed" was his way of communicating to the jury an event or circumstance he had personally observed by use of a term that had a generally understood meaning.

Appellant claims the trial court erred in giving Final Instruction No. 27 to the jury. However, he concedes the same instruction was last approved by this Court in *Ringham v. State,* (1974) 261 Ind. 628, 308 N.E.2d 863. We are unpersuaded by his argument this instruction is confusing or misleading to the jury. There was no error in reading Final Instruction No. 27 to the jury.

Appellant claims the trial court erred in refusing to read thirteen of his tendered instructions to the jury. His argument as to why each should have been given is the same: That they were correct statements of the law, that there was evidence in the record to support giving them, and that their substance was not adequately covered by any other instructions that were given. In each of the thirteen instructions we find that the jury is instructed that the burden of proof of the State is to prove each element of the offense "to the exclusion of every reasonable theory of innocence."

Upon examining the record we find appellant is clearly incorrect in his assertion that the subject matter was not covered in an instruction that was given. The subject was covered in both Final Instructions Nos. 20 and 26. It is not error to refuse an instruction if its subject matter is adequately covered in instructions that were given. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70.

Appellant claims the trial court erred in admitting the testimony of James Thompson, an Indiana State Police technician and an expert on firearms and ballistics testing. Thompson had conducted tests on the .22 caliber handgun taken from appellant when he was arrested, a box of .22 caliber cartridges recovered from the van and the bullet fragments removed from the decedent's body. He testified his analysis was inconclusive as to whether the bullet fragments recovered from the decedent's body were fired from the gun taken from appellant, due to mutilation of the bullet fragments and the poor quality of the handgun. Appellant objects to the admission of Thompson's testimony because the written report he made as to the results of his analysis had already been admitted into evidence. Appellant argues since the State was attempting to prove the terms of a writing, only the written report was admissible to prove its content, and oral testimony from Thompson regarding its contents was inadmissible under the best evidence rule.

Appellant misconstrues the purpose of the rule. The best evidence rule requires the use of a writing where a party seeks to prove the terms of the writing itself. *Eldridge v. State,* (1977) 266 Ind. 134, 361 N.E.2d 155; *Hilligoss v. State,* (1970) 253 Ind. 443, 255 N.E.2d 101. However, in many cases such as this one, the testimony of a witness as to facts he has personally observed is not inadmissible simply because these observations or conclusions have been embodied in a written report. *See, e.g., Jackson v. State,* (1980) Ind., 411 N.E.2d 609; *Hilligoss, supra.* In such a case there is no violation of the best evidence rule so long as the witness is being asked to testify as to his personal observations and not to attest to the content of the writing he has prepared.

Appellant contends the evidence in this case is insufficient because it does no more than establish a suspicion of guilt. *See Dunn v. State,* (1973) 260 Ind. 142, 293 N.E.2d 32; *Manlove v. State,* (1968) 250 Ind. 70, 232 N.E.2d 874. In making this argument he points to his own statements regarding the ubiquitous Jesse Smith, the failure of the State to show the .22 caliber

revolver taken from him was the murder weapon, and Buzz Lohrum's testimony that Noah Risinger stated to him as he lay on the ground, *"[T]hey* was going to rob us." (Emphasis added.)

We hold the circumstantial evidence in the case at bar is sufficient evidence from which the jury could have concluded beyond a reasonable doubt that appellant committed the charged crimes. The fact that the decedent used the plural pronoun "they" in his statement "they was going to rob us" was a conflict in the evidence for the jury to resolve. *Logsdon v. State,* (1980) Ind., 413 N.E.2d 249; *Hauger v. State,* (1980) Ind., 405 N.E.2d 526. We do not reverse a conviction because the jury resolved the conflict in favor of the State. *Id.*

We also hold the evidence is sufficient for the jury to have concluded beyond a reasonable doubt that appellant committed a robbery, the thing stolen being a quantity of gasoline. The evidence showed when the van was stolen from its owner in Dayton, Ohio, it had about one quarter of a tank of gas in it. The evidence also showed when appellant was arrested the gas tanks were almost full. One witness testified she saw a man matching appellant's description pumping gas into the van at the station. It is a reasonable inference that the reason for the shooting was appellant's refusal to pay for the gasoline he had just pumped in and Risinger's response to that refusal. Considering also the manner of the decedent's death, the evidence is sufficient to affirm the conviction for armed robbery.

The trial court is in all things affirmed.

All Justices concur.