**Bobby Del DANIEL, Jr. Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S00–8812–CR–982.

Supreme Court of Indiana.

Dec. 10, 1991.

Rehearing Denied Feb. 14, 1992.

Monica Foster, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Burglary, a Class A felony, for which he was sentenced to twenty (20) years imprisonment.

The facts are: Biff Brent Hornaday was an assistant band director at Pike High School in Indianapolis, Indiana. On Sunday, May 3, 1987, he drove to the school to prepare for a noon meeting with some colleagues from out of town to discuss judging marching band competitions. While walking down the hallway near the industrial arts area of the school building, Hor-

naday noticed light coming from an open classroom door. Stopping to say hello to the instructor he expected to find there, Hornaday instead saw appellant sitting on a table.

When Hornaday asked "What are you doing here?" appellant replied, "Don't move, don't move," and, reaching behind him, produced a pistol, aimed it at Hornaday and repeatedly pulled the trigger. The handgun misfired, however, and Hornaday assured appellant, "I don't know who you are, these doors are open, why don't you leave." Backing out of the classroom, Hornaday started to trot down the hallway when appellant jumped out of the doorway, yelled "hey" and fired a shot at Hornaday's face, penetrating his chin. Hornaday was stunned but soon recovered and continued running down the corridor. Appellant caught up with him and endeavored to hit him with a claw hammer. After a brief struggle, appellant demanded that Hornaday lie down. To placate his assailant, Hornaday complied and was rendered unconscious by a hammer blow to the back of his head. Upon regaining consciousness, Hornaday made his way over to a telephone booth located near the entrance to the school cafeteria and called 911. After authorities arrived, Hornaday was transported by ambulance to St. Vincent Hospital where he was admitted for treatment of the gunshot wound to his face as well as the depression wounds and lacerations to his head from the hammer's head and claw.

Police investigators discovered several rooms in the school had been ransacked, and an old metal safe had been moved from an administrative office to the shop where Hornaday had initially encountered appellant. Holes had been drilled into the safe and the dial had been damaged. Five days after the incident, Hornaday assisted detectives in developing a composite picture of the perpetrator, which was presented to Pike High School officials who were able to generate a list of past and present students who fit the profile to some degree. From the list, detectives conducted interviews of twelve juveniles, including appellant, who waived his rights, gave an exculpatory statement, and was fingerprinted. Latent fingerprints found on the safe turned out to match appellant's, and the instant prosecution ensued.

Appellant contends the trial court erred in granting the State's motion to waive him from juvenile court to stand trial as an adult. He argues he was denied due process of law because the court's order waiving jurisdiction was not sufficiently specific to comply with the provisions of Ind.Code § 31–6–2–4(e), which permits waiver to adult criminal court jurisdiction once a showing is made that the child is charged with the equivalent of a Class A or B felony, that probable cause exists to believe the child committed the act charged, and the child was at least sixteen years of age when the charged act was committed, "unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system."

Appellant cites authority, including *Kent v. United States* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 and *Gerrick v. State* (1983), Ind., 451 N.E.2d 327, for the propositions that due process requires a statement of reasons, including relevant facts, underlying a waiver from juvenile jurisdiction and that such statement must not merely recite statutory language. According to *Clemons v. State* (1974), 162 Ind.App. 50, 317 N.E.2d 859, *cert. denied,* 423 U.S. 859, 96 S.Ct. 113, 46 L.Ed.2d 86, in making the waiver determination, the juvenile court must necessarily consider the nature of the offense, whether it is part of a repetitive pattern, whether the child is beyond juvenile justice rehabilitation, and whether waiver is necessary to protect the public security. The *Clemons* court went on to hold that specifying these considerations in the record would permit meaningful review so as to keep the standard away from the verge of unconstitutional vagueness.

As the State points out, however, a juvenile court's decision to waive jurisdiction is reviewed only for an abuse of discretion, citing *Trotter v. State* (1981), Ind., 429 N.E.2d 637. We noted in that case that the

Supreme Court's opinion in *Kent, supra* was an interpretation of the District of Columbia juvenile code and thus not of constitutional dimension. And in *Trotter*, as in the present case, the court's statement reflected its inability to find it would be in the best interests of the child and of the safety and welfare of the community for the child to remain in the juvenile system, without reciting specific facts in support.

■ Here, however, as in *Trotter*, the record reflects sufficient facts for the court to determine waiver was appropriate; as we noted in *Gerrick, supra*, such supporting facts must appear either in the order or in the record of the waiver hearing. The court here had before it the viciousness of appellant's attack, the lack of any justification for it, the seriousness of its results, and the relatively mature age, 17, of the juvenile involved. These facts are ample to support a finding that it would not be in the best interests of the community to retain appellant in the juvenile system.

The trial court did not err in ordering appellant waived into criminal court.

Appellant contends the trial court erred in denying his motion to suppress and in admitting, over his timely objection, evidence pertaining to his fingerprints and palmprints. He argues his prints were taken in violation of his Fourth Amendment rights to be free from unreasonable search and seizure in that his consent to be fingerprinted was vitiated by the investigating officer's assertion that in any event, a warrant would be issued allowing him to take the prints.

Appellant cites Ind.Code § 31–6–8–1.5(c) which states that a juvenile's fingerprints may be taken if the officer has probable cause to believe that latent prints found during an investigation belong to that juvenile. He also cites federal authority to the effect that probable cause must precede non-consensual fingerprinting, *e.g., Hayes v. Florida* (1985), 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705. Noting the absence of proof in the court below of probable cause to arrest appellant prior to the comparison of fingerprints, he accordingly concludes the absence of both consent and probable cause renders the fingerprint evidence inadmissible.

■ Appellant further notes the trial court, in ruling on the motion to suppress, expressed concern that the officer had told appellant and his parents that he "could go get a court order" if they failed to consent, yet went on to deny the motion, finding "we don't feel that the defendants have made the sufficient case, at this particular time." Appellant maintains this reflects trial court error in allocating to him the burden of proof regarding consent, which properly rests entirely with the State. *See Gregory v. State* (1989), Ind., 540 N.E.2d 585. In context, however, it appears the court was referring to appellant's burden to support his motion to dismiss rather than any burden to prove involuntariness of his consent. This interpretation is reinforced by the lack of any contemporaneous objection to the trial court's remark, which also means this allegation of error has been waived. *Wood v. State* (1987), Ind., 512 N.E.2d 1094.

Both appellant and the State acknowledge that whether an advisement that a search warrant will be *obtained,* as opposed to *sought,* constitutes coercion so as to vitiate subsequent consent to a search, is a question of first impression in Indiana. The State notes the split of federal authority on this point and suggests this Court should resolve any such question of voluntariness as a question of fact to be determined by the trial court, reviewable only by examining the evidence most favorable to the trial court's decision together with any uncontradicted adverse evidence, citing *Maynard v. State* (1987), Ind.App., 508 N.E.2d 1346.

Appellant, however, asserts it clearly is the majority position that such an advisement renders choice illusory and consent involuntary where a warrant in fact could not lawfully issue, citing, *e.g., United States v. Anderson* (E.D.N.Y.1990), 752 F.Supp. 565; *United States v. Cruz* (S.D.N.Y.1988), 701 F.Supp. 440.

Detective Beasley informed appellant and his parents "that eventually I would have to probably get a search warrant for his fingerprints some way, someplace down the road, if [they] objected, which would be fine with me, one way or the other, but it would save me a lot of paperwork." Appellant's mother testified Detective Beasley, when he initially requested her by telephone to bring appellant to the police station to be interviewed, told her that "I can get his fingerprints if you don't cooperate. I can get his fingerprints," and that subsequently at the station, when she asked Detective Beasley how many parents of the children he had sought to fingerprint had cooperated, "he said most of them did, but it didn't make any difference anyway, he could get a court order." She testified that following this advisement, she, her husband, and appellant discussed whether to waive his rights and sign the permission to search form for appellant's fingerprints, and reasoning if they refused the officer would only get a court order. Feeling they had no choice but to sign the consent form, they did so.

█ The question of voluntariness is a matter of trial court discretion; on review, this Court will not reweigh the evidence, and if it is conflicting, we will consider only that evidence which supports the trial court's ruling. *Jones v. State* (1989), Ind., 536 N.E.2d 267. This same standard applies to review of the reasonableness of search and seizure. *Holt v. State* (1985), Ind., 481 N.E.2d 1324, *cert. denied,* 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 532. Focusing on the officer's testimony in the case at bar, there was evidence to enable the trial court to find appellant's consent to be fingerprinted was voluntary and valid. Having found Detective Beasley's advisement regarding a warrant to obtain fingerprints to be that one would be sought, rather than routinely obtained, it thus is of no moment that no probable cause existed at the time of the advisement to support issuing such a warrant.

The admission of evidence relating to appellant's fingerprints was not error.

█ Appellant contends the trial court erred in entering judgment on his conviction of burglary as a Class A felony, arguing the evidence was insufficient to support the Class A enhancement factor of having resulted in serious bodily injury. Appellant notes he initially was charged in a three-count information with attempted murder and with criminal confinement as a Class A felony, along with the burglary count. Noting in addition that the two strongest items of proof against him were his palmprint found on the school safe and Hornaday's eyewitness identification of him as the perpetrator, he reasons the jury's acquittal on the attempted murder and confinement charges, each of which incorporated a serious bodily injury element, means they did not believe the victim's identification testimony and found appellant was guilty of only the burglary.

He cites *Townsend v. State* (1986), Ind., 498 N.E.2d 1198 for the proposition that this Court will look at findings and verdicts to determine if they are inconsistent, and argues that his Class A burglary conviction in this case is fatally inconsistent with his acquittals of attempted murder and Class A criminal confinement.

Nevertheless, as the State points out, *Townsend* holds that "perfect logical consistency should not be demanded, and only extremely contradictory and irreconcilable verdicts warrant corrective action by this Court." *Id.* at 1200. Here, the jury might have based its acquittal upon the absence of proof of any of the elements of the charges not resulting in convictions—most notably, specific intent—and not merely the element of serious bodily injury. It is for this reason, too, that we need not presume the jury found Hornaday's identification of appellant as his assailant incredible and concluded that while appellant left his palmprint on the safe, the assault on Hornaday was perpetrated by someone else. We remain unconvinced by appellant's reasoning and find no fatal inconsistency in the verdicts.

It was not error to enter judgment on appellant's conviction of burglary as a Class A felony.

Appellant contends the trial court erred in incorrectly instructing the jury as to the elements of the offense of burglary as a Class A felony. While reading its preliminary instructions, the trial court stated, "If the State does prove, beyond a reasonable doubt, that the burglary resulted in serious bodily injury to the other person, you should find the defendant guilty of Burglary, a Class A Felony." Appellant objected at trial and now maintains that this statement allowed a reasonable juror to conclude that appellant could be convicted of burglary even if he did not actually commit the burglary, so long as a person was injured.

We disagree. As the trial court noted in overruling appellant's objection, jury instructions are to be considered as a whole and in reference to each other. *Jennings v. State* (1987), Ind., 514 N.E.2d 836. Error in a particular instruction will not require reversal unless the entire charge misleads the jury as to the law in the case. *Id.* A few lines before the contested portion of the instruction at hand, it states that "[t]o convict the defendant, the State must prove each of the following elements: The defendant, Bobby Del Daniels, Jr., (1) did break and enter; (2) the building and structure of Pike High School ...; (3) with the intent to commit the felony of Theft therein...." The record leaves no doubt that the jury was properly instructed that appellant must have committed the burglary in order to be convicted therefor. We see no error here.

Appellant contends the trial court erred in instructing the jury on the "breaking" element of burglary. Final Instruction No. 15 reads as follows: "In order to constitute a 'breaking,' it is not necessary to show forcible entry. It is necessary only to show that some physical act was used to gain entry." Appellant argues this instruction is erroneous "because it indicates that the physical act of walking through an open door is sufficient to constitute the element of 'breaking.'"

Again, we disagree. The instruction set out here, which appears to have been taken word for word from the standard enunciated in *McCormick v. State* (1978), 178 Ind. App. 206, 382 N.E.2d 172, merely employed different words to state that even the slightest force, when used to accomplish some movement of a structural impediment, is all that is necessary to constitute the element of "breaking." *See, e.g., Trice v. State* (1986), Ind., 490 N.E.2d 757; *Strode v. State* (1985), Ind.App., 486 N.E.2d 642. It was not error to give the jury Final Instruction No. 15.

Appellant contends the trial court erred in admitting over his hearsay objection Detective Beasley's testimony regarding results of tests run on hair samples taken from a shirt belonging to Steve Hall, an acquaintance of appellant. Hall and appellant had been playing basketball at Pike High School the night before the crime, and because Hall's appearance and yellow golf shirt fit Hornaday's description of his assailant, a search warrant was obtained and police recovered the shirt. On cross-examination of Detective Beasley, appellant elicited that one of the hairs found on the shirt belonging to Hall, who is black, was of caucasian origin.

During the State's redirect examination of Detective Beasley, he was allowed to state, over appellant's hearsay objection, that lab testing revealed the hairs found on Hall's shirt "were not Biff Hornaday's." Appellant maintains this unequivocal statement was improperly admitted under the rule of *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482 because the declarant had not yet testified, citing *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, *cert. denied*, 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284, and because he was prejudiced by thus having to call as a witness the declarant, John Mann, who performed the hair comparison testing and testified he could not state positively that the hairs found on Hall's shirt were not Hornaday's, but that their microscopic characteristics did not match.

We are unable to follow appellant's reasoning to its conclusion of reversible error. In the first place, it seems that any hearsay violation, along with any accrued error, would be cured by appellant's

opportunity to cross-examine Mann, which in fact he did. In the second place, it was appellant who opened the door to hair comparison results, entitling the State to introduce the rest of the results by that witness. *See Ryans v. State* (1988), Ind.App., 518 N.E.2d 494.

The admission of Detective Beasley's testimony regarding hair sample comparison results was not reversible error.

Appellant contends the trial court erred in improperly excusing prospective juror Farrell for cause upon its own motion. After Ms. Farrell, who had visited a young friend who was incarcerated in a penal institution, expressed misgivings about her ability to have anyone "locked up," the trial court sought her assurances that she still would be able to decide guilt or innocence impartially. Her response was, "to be honest with you, I really don't know if I could say he's guilty, and I know in the back of my mind that he may be locked up. I don't know."

 .Appellant maintains such a reason is not among those listed in the statute, Ind.Code § 35–37–1–5, as grounds for a challenge for cause. He also argues that juror Farrell's opinions were not so strong and unyielding as to merit excusing her from the panel. The trial court is afforded discretion in excusing prospective jurors for cause, *Martin v. State* (1989), Ind., 535 N.E.2d 493; on review, an abuse of that discretion resulting in prejudice must be demonstrated. *Id.; Johnson v. State* (1982), Ind., 442 N.E.2d 1065. Thus while Ms. Farrell's opinions perhaps were not so unyielding as those found unacceptable in *Campbell v. State* (1989), Ind., 547 N.E.2d 843, the same degree of juror prejudice shown there on review need not be demonstrated before the trial court to justify her removal.

No error has been shown in the trial court's excusal of prospective juror Farrell.

Appellant contends the trial court erred in admitting evidence of Hornaday's identification of him as the perpetrator, which, he argues, was tainted by unduly suggestive pretrial identification procedures. He points out that Hornaday, when first questioned, stated that his assailant was not a Pike student, then saw him depicted on television as a suspect in the crime and described as a Pike High School student prior to picking him out of a photographic lineup; that he previously had participated in rendering a composite drawing of the suspect which deviated from appellant's own appearance; and then, after initially estimating he was 95 percent sure that appellant was the perpetrator, he revised his estimate upward to 100 percent and then to 150 percent as time went on.

 A determination as to improper suggestiveness of pretrial identification procedures is made by consideration of the totality of the circumstances. *Alexander v. State* (1983), Ind., 449 N.E.2d 1068. Appellant argues that although Hornaday was shown two six-picture arrays, of which only one included his photograph, the procedure was impermissibly suggestive because the witness had seen him depicted on television, had heard he was a Pike student, and likely recognized him from school. However, nothing suggestive accompanied the photograph identification array; there is no evidence of verbal communication nor of graphic characteristics emphasizing or distinguishing appellant's photograph so as to render the procedure unduly suggestive. *See Lane v. State* (1983), Ind., 445 N.E.2d 965.

 It also is notable that of the two occasions appellant was depicted on television, on one his face was not shown and the other used a yearbook photo. Moreover, any resultant suggestion implanted in the witness's mind, *Norris v. State* (1976), 265 Ind. 508, 356 N.E.2d 204, as well as discrepancies between appellant's appearance and the composite, and between the televised depiction and Hornaday's recollection, go only to the weight of his identification testimony rather than to its admissibility. *Lane, supra.*

Admission of evidence of Hornaday's pretrial and in-court identification of appellant was not error.

■ Appellant contends the trial court erred in allowing Detective Beasley to testify, over his objection, as to the law regarding permissible interrogation of juvenile suspects. On redirect examination by the State, the witness was asked to explain why he never had interviewed appellant's acquaintance, Steve Hall, but instead had spoken only to adult family members (including a police detective uncle). Detective Beasley went on to explain that parental permission, validated by a preceding advisement as to *Miranda* rights, is required before interviewing a juvenile absent probable cause, and that such consent was not forthcoming from Steve Hall's parents.

Appellant contends allowing this testimony was error because the witness was not qualified as an expert in the area of juvenile rights law, and in Indiana, questions of law are not properly the subject of witness opinion, citing *Brown v. State* (1983), Ind., 448 N.E.2d 10. A trial court will be reversed on the admission of opinion evidence only for an abuse of discretion. *Hedrick v. State* (1982), Ind., 430 N.E.2d 1150. Because appellant has shown no prejudice whatsoever from the detective's "expert" testimony, any error here would be harmless.

■ Moreover, as the State points out, appellant on cross-examination had elicited from the witness the fact that he had not interviewed Hall, thus opening the door on redirect to an explanation of the reason therefor. When the trial court overruled appellant's objection, citing this opened door as its basis, defense counsel replied, "I agree," thus in effect withdrawing his objection and leaving nothing for our review. We find no reversible error in the admission of Detective Beasley's explanation.

Appellant contends the trial court erred in allowing the State to exercise its peremptory challenges improperly to excuse two veniremen on racial grounds. During jury selection, the prosecutor used peremptory strikes to excuse prospective jurors Blain and Watson who, like appellant, are black. Appellant objected, alleging a denial of equal protection under *Batson v. Ken-*

*tucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

■ Appellant maintains the State's reasons given at trial did not suffice to demonstrate a race-neutral basis for striking prospective jurors Blain and Watson. The prosecutor explained she struck Blain because appellant looked familiar to her and she "was trying to figure out where I know him from." This explanation is undeniably race-neutral and, while perhaps not quite grounds for a challenge for cause, the prosecutor's desire to avoid the risk that Blain might, at some point during the trial, remember from where she knew appellant, is a sufficient non-pretextual basis to support a peremptory challenge. The State's asserted reason need not rise to the level of justification required of a challenge for cause. *Batson, supra.*

■ Regarding prospective juror Watson, the prosecution stated she struck him because he said he was a social worker and was acquainted with members of appellant's family who were seated in the courtroom. While appellant argues it is irrelevant, we can see why the State might project onto a social worker a predisposition to be pro-defense. Appellant also sees Watson's acquaintance with his family members as no reason for the State to strike him, in view of their failure to strike prospective juror Lollar, who had stated she frequented the restaurant owned by the victim's parents. Again, it seems natural that the prosecution would be more concerned over a juror's acquaintance with the defendant's family than with the victim's. We find the State's asserted reasons were sufficient to rebut appellant's *prima facie Batson* claim.

No error resulted from the State's use of its peremptory challenges.

■ Appellant contends the trial court erred in instructing the jury as to their proper function in a criminal trial. He argues that telling the jury over his objection that they "must determine the guilt or innocence of the defendant" and that their "sole responsibility is to determine innocence or guilt herein" deprived him of due

process of law by denying him his presumption of innocence and relieving the State of its burden of proof by shifting it to him. Standing alone, his argument that the quoted instructions might lead a reasonable juror to conclude that if appellant were not proven innocent, he must then be found guilty, has some intuitive appeal.

Instructions, however, are never construed standing alone; they are to be read together and considered as a whole. *Jennings, supra.* The jury in the case at bar also was instructed as follows:

"Under the law of this state, you are the sole judges of both the law and the evidence, and you must presume that the defendant is innocent. You must continue to believe he is innocent throughout the trial, unless the State proves that the defendant is guilty, beyond a reasonable doubt, of every essential element of the offense charged. The burden of proof herein is on the State alone, and never shifts to the defendant. Since the defendant is presumed to be innocent, he is not required to present any evidence to prove his innocence, nor to prove, do or explain anything. If at the conclusion of the trial there remains in your mind a reasonable doubt concerning the defendant's guilt, you must find him not guilty."

We find little danger that a reasonable juror, after hearing the foregoing, would be led astray by the earlier references to appellant's "innocence." It further is worth noting that virtually the same instruction was held not to invade the jury's province in *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236. While, as appellant points out, this semantically is not the same due process complaint as lodged here, its import is identical.

There was no reversible error in instructing the jury that they were to decide appellant's guilt or innocence.

The trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER, J., dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting:

I respectfully dissent. In particular I cannot agree that it was not error to instruct the jury that its duty is to determine the "guilt or innocence" of the defendant. The entire instruction containing this command reads as follows:

*You must determine the guilt or innocence of the defendant,* and if you have a reasonable doubt as to guilt of the crime charged, or any offense included thereunder, then you must find the defendant not guilty.

However, if you find that the state has proven beyond a reasonable doubt the material allegations of the charge against the defendant, or any offense included thereunder, then you must find the defendant guilty. Proper verdict forms will be furnished for your use: Furthermore *your sole responsibility is to determine innocence or guilt herein,* and should there be a finding of guilty, sentencing responsibility is that of the trial judge alone.

In *Taylor v. State* (1981), Ind., 420 N.E.2d 1231, this Court concluded that in a trial on habitual offender allegations the wording of a court's instruction which called for a finding of "innocence or guilt" was improper, but such wording did not constitute fundamental error requiring reversal in absence of an objection to such instruction at trial. The majority opinion interprets the case of *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, as holding that *Taylor* had approved such instruction, whereas the loose language in that opinion is correctly interpreted to mean that *Taylor* upheld the instruction over a claim that it was "fundamental error," thus again refusing as in *Taylor* to judge in the absence of an objection at trial whether the instruction was simple error. Here, defense counsel made proper and timely objections to the instruction that the trial judge fully considered and rejected.

At the present time, an Indiana jury in a criminal case has no duty to determine the innocence of the accused, and it is improper to so instruct a jury. *Taylor,* 420 N.E.2d 1231. *State v. Brouillette,* 286 N.W.2d 702

(Minn.1979). Such improper instructions are diametrically opposed to the instruction that the jury must presume innocence until they are persuaded of guilt.

Here, the instruction, unlike the instructions considered in *Taylor* and *Abercrombie* employs the improper language not once but twice. The jury was first instructed that they "must determine the guilt or innocence of the defendant" and then against that they were instructed that their "sole responsibility is to determine innocence or guilt herein." This instruction appears toward the end of all instructions and may therefore have been deemed to be in further explanation of that which was included in all prior instructions. For these reasons, the impropriety in it is even more forcefully presented. I would hold that this instruction was error because a reasonable juror could have interpreted it as modifying the previous instruction on presumption of innocence by calling for the jury to abandon that presumption in arriving at its conclusion, and to instead compare the relative merits of inferences of guilt and innocence arising from the evidence at trial. *See Cage v. Louisiana,* —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

Erroneous instructions, do not mandate reversal. Here, however, the major body of evidence of appellant's guilt is not without weakness. The victim of this brutal attack was seriously injured about the head, in intensive care for two days, and consequently would have had some difficulty in recalling his attacker. Appellant's fingerprints were taken from a safe that had been moved from a secretary's office within the school, an item to which appellant, as a student in that school, may have had previous access. I cannot say that the giving of this erroneous instruction was harmless error. I would therefore reverse for a new trial.

DICKSON, J., concurs.