## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Assistant to the
State Public Defender
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kyle Willhite,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

October 21, 2016

Court of Appeals Case No.
90A02-1603-PC-581

Appeal from the Wells Circuit Court

The Honorable Thomas M. Hakes, Special Judge

Trial Court Cause No.
90C01-1407-PC-2

**Bradford, Judge.**

# Case Summary

[1] In March of 2007, S.M. reported that Appellant-Petitioner Kyle Willhite had sexually molested her during the summer of either 2001 or 2002, when she was nine or ten years old. S.M. claimed that the abuse had occurred at Willhite's home while she was being babysat by Willhite's sister.

[2] On April 23, 2007, Appellee-Respondent the State of Indiana ("the State") filed a petition alleging that Willhite was a juvenile delinquent for committing what would have been Class B felony child molesting if committed by an adult. Evidence indicated that Willhite was fourteen years old when he committed the alleged misconduct. Willhite and the State entered into an agreement under the terms of which Willhite agreed to consent to waiver of the matter to adult court in exchange for the State agreeing to reduce the charge to a Class C felony. Once in adult court, Willhite would enter into a written disposition of the charges and the State would argue that the executed portion of Willhite's sentence should be capped at four years. The juvenile court accepted the parties' agreement and transferred the case to adult court.

[3] Pursuant to the terms of the parties' agreement, the State charged Willhite with Class C felony child molesting in the adult court, Willhite pled guilty to the Class C felony child molesting charge, and the State agreed that the executed portion of Willhite's sentence should be capped at four years. Willhite, however, subsequently failed to appear for the guilty plea hearing, after which a warrant was issued for his arrest. He was eventually arrested, at which time he again agreed to plead guilty. However, just before sentencing, Willhite filed a motion to dismiss the Class C felony charge, claiming that it was physically

impossible that he could have committed the charged acts during the summer of 2002. Willhite also claimed that he could not be prosecuted for Class C felony child molesting because prosecution was barred by the applicable five-year statute of limitations. The trial court denied Willhite's motion to dismiss and set the matter for sentencing. Again, before sentencing, Willhite filed a pro-se motion to withdraw his guilty plea, claiming that the matter should never have been waived to adult court and that he was coerced into pleading guilty by advice received from his counsel. The trial court denied Willhite's motion and sentenced him to a term of four years with all but two years and fifteen days suspended to probation.

[4] Willhite subsequently sought post-conviction relief. Following an evidentiary hearing, the post-conviction court denied Willhite's petition for post-conviction relief ("PCR petition"). Willhite appealed, contending that (1) the juvenile court erred in waiving the underlying matter to adult court, (2) he suffered ineffective assistance from both his juvenile and trial counsel, and (3) the post-conviction court abused its discretion in excluding certain evidence. We affirm.

# Facts and Procedural History

[5] Willhite was born on March 18, 1988, and was fourteen years old during the summer of 2002. S.M. was ten years old during the summer of 2002. S.M. was in fourth grade during the 2001-2002 school year. For about half of the 2001-2002 school year and part of the following summer, Willhite's sister babysat S.M. at Willhite's home in Bluffton.

[6] On March 13, 2007, fifteen-year-old S.M. reported to Officer Steven Cale that Willhite had touched her vagina with his fingers and his mouth on more than one occasion during the summer of 2002. S.M. indicated that the incidents occurred while she was at Willhite's home being babysat by Willhite's sister and that the incidents ended when Willhite's family moved to Montpelier. Later that same day, Officer Cale interviewed nineteen-year-old Willhite. During this interview, Willhite indicated that he had "dated" S.M. when he was "about fourteen years old" and that he had touched her vagina with his fingers and mouth. Appellant's App. Vol. 3, p. 68. Willhite also signed a statement in which he admitted that he had molested S.M. when he was fourteen years old and she was ten years old.

[7] On April 23, 2007, the State filed a petition alleging that Willhite was a delinquent child for committing what would have been Class B felony child molesting if committed by an adult. On November 25, 2008, when Willhite was twenty years old, the State filed a motion requesting the juvenile court to waive jurisdiction of the matter. After investigating the allegations levied against Willhite, his juvenile counsel determined that, in light of Willhite's age, juvenile record, and the fact that Willhite had signed a statement under oath admitting that he was fourteen years old when he committed the alleged misconduct, "there was a strong probability" that the juvenile court judge would grant the State's request. PCR Tr. p. 6. After discussing these matters with Willhite, juvenile counsel engaged the State in negotiations in an attempt to limit Willhite's potential exposure to incarceration. Juvenile counsel

indicated that he engaged in this approach because he believed this approach would benefit Willhite. As a result of these negotiations, the parties entered into an agreement, the terms of which provided that Willhite would agree to the waiver of the matter to adult court and would enter into a written disposition of the adult charges. The terms of the agreement further stated that in exchange, the State would (1) charge Willhite in adult court with the reduced charge of Class C felony child molesting, (2) argue that the executed portion of Willhite's sentence should be capped at four years, (3) allow Willhite to turn himself in once charges were filed, and (4) request that his bond be set at $5000.

[8] On August 12, 2009, when Willhite was twenty-one years old, the juvenile court conducted a hearing on the State's motion. During this hearing, the following exchange took place:

> [Juvenile Counsel]: Yes, Your Honor, but I believe we've reached an agreement [ ] where Mr. Willhite would be agreeing to the waiver and we have an agreement with the State regarding a number of other items, I don't know if the Court wishes to hear the entire agreement, but the fact is that it is a waiver into adult Court.
> [Deputy Prosecutor]: There will be a subsequent written disposition as to the adult charges and that was offered in exchange for a waiver today.
> [Juvenile Court]: Mr. Willhite, are you agreeing to be waived to adult Court in this matter?
> Mr. Willhite: Yeah.
> [Juvenile Court]: Just for the record why don't we recite the agreement so that I can ask Mr. Willhite some questions about that.
> [Deputy Prosecutor]: The eventual charges will be a C felony. There will be a cap of a maximum of 4 years executed to

the [Department of Correction]. Both sides are free to argue with respect to sentencing, he would have a bond of $5,000 and it was agreed that he can turn himself in to the jail or to the officer as circumstances dictate as soon as the charges are filed. We anticipate they will be filed before the end of the week.

[Juvenile Court]: Mr. Willhite, is that the agreement that's been reached between you and the State of Indiana?

Mr. Willhite: Yeah.

[Juvenile Court]: And that's based upon that agreement you're agreeing to be waived to adult Court is that correct?

Mr. Willhite: So I am still be [sic] charged for an [sic] adult Court?

**\*\*\*\***

[Juvenile Counsel]: You're agreeing to be charged in adult Court for what [the deputy prosecutor] just recited, the waiver agreement is that you'll be having charges filed as a C felony, that there's going to be an agreement that there would be a cap of four years on any sentence with both sides to be able to argue as to the sentence. That you're being allowed to leave today on the basis that you agree to turn yourself in once charges are filed and that a bond level will be of $5,000.

Mr. Willhite: Yeah.

[Juvenile Counsel]: Is that what has been agreed to?

Mr. Willite: Yes, sir.

[Juvenile Court]: Very well then the Court will order Mr. Willhite to be waived to adult Court and once the charges are filed bond will be set at $5,000 and you'll be given an opportunity to turn yourself in either to the jail or to the officer.

Petitioner's Ex. 8, pp. 3-4.

[9] The next day, on August 13, 2009, the State charged Willhite in the trial court with Class C felony child molesting. On November 30, 2009, Willhite entered a plea of guilty, pursuant to a plea agreement which he had entered into with

the State. Pursuant to the terms of this plea agreement, the State again agreed that the executed portion of Willhite's sentence would be capped at four years. Willhite, however, failed to appear for the March 29, 2010 guilty plea hearing. After Willhite failed to appear, the trial court issued a warrant for Willhite's arrest.

[10] On August 17, 2012, when Willhite was twenty-four years old, Willhite entered an open plea of guilty. In pleading guilty, Willhite admitted that during the summer of 2002, when he was fourteen years old, he performed oral sex on S.M. with the intent to arouse his sexual desire. The trial court found that the factual basis supported Willhite's guilty plea, accepted the plea, and entered a judgment of conviction.

[11] Following the trial court's acceptance of his guilty plea but before sentencing, Willhite filed a motion to dismiss the pending criminal charge, arguing that the charge was barred by the applicable five-year statute of limitations. In filing this motion, Willhite maintained that it would have been physically impossible for him to commit the charged offense during the summer 2002 because his family had been subjected to an order of eviction from their Bluffton home that was entered on May 9, 2002. The trial court held a hearing on Willhite's motion on January 11, 2013, during which it admitted the eviction order into evidence. The trial court denied Willhite's motion to dismiss on March 8, 2013.

[12] On March 22, 2013, Willhite filed a pro-se motion to dismiss his guilty plea. In seeking to have his guilty plea dismissed, Willhite argued that he had been

coerced into pleading guilty, that there are a number of unanswered questions relating to the applicable statute of limitations, and that he never should have been waived to adult court. The trial court conducted a sentencing hearing on April 16, 2013, during which it denied Willhite's motion to dismiss his guilty plea and sentenced him to a term of four years, with all but two years and fifteen days suspended to probation.

[13] Following sentencing, Willhite filed a direct appeal. Willhite, however, subsequently requested dismissal of the direct appeal and initiated the instant post-conviction proceedings. Willhite filed his PCR petition on July 29, 2014. In seeking post-conviction relief, Willhite contended that both his juvenile and trial counsel provided ineffective assistance. The post-conviction court conducted an evidentiary hearing on Willhite's petition on December 18, 2015. On February 11, 2016, the post-conviction court issued an order denying Willhite's petition. This appeal follows.

# Discussion and Decision

[14] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt*

*v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[15] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

[16] In seeking post-conviction relief, Willhite contends that the juvenile court erred in waiving the underlying matter to adult court. Willhite also contends that both his juvenile and trial court counsel provided ineffective assistance and that the post-conviction court abused its discretion in excluding certain evidence. For its part, the State contends that the juvenile court did not err in waiving the underlying matter to adult court, Willhite did not receive ineffective assistance

from either his juvenile or trial counsel, and that any potential error in excluding the challenged evidence was, at most, harmless.

# I. Jurisdictional Questions

Willhite contends that he should not have been waived to adult court because the adult court, *i.e.* the trial court, did not have subject matter jurisdiction over his case. While Willhite presents this contention as a challenge to whether the trial court had subject matter jurisdiction over the underlying criminal proceedings, Willhite's challenge is more accurately labeled as a challenge to the propriety of the juvenile court order waiving Willhite to adult court.

Juvenile courts generally have exclusive original jurisdiction over juvenile delinquency proceedings. Ind. Code § 31-30-1-1 (2003). However, juvenile courts may, under certain circumstances, waive this jurisdiction. "Waiver of jurisdiction refers to an order of the juvenile court that waives the case to a court that would have jurisdiction had the act been committed by an adult." Ind. Code § 31-30-3-1 (1997). With regard to waiver of juvenile court jurisdiction, Indiana Code section 31-30-3-2 (1997) provides as follows:

> Upon motion of the prosecuting attorney and after full investigation and hearing, the juvenile court may waive jurisdiction if it finds that:
>> (1) the child is charged with an act:
>>> (A) that is heinous or aggravated, with greater weight given to acts against the person than to acts against property; or

(B) that is a part of a repetitive pattern of
delinquent acts, even though less
serious;
(2) the child was at least fourteen (14) years of age
when the act charged was allegedly committed;
(3) there is probable cause to believe that the child
committed the act;
(4) the child is beyond rehabilitation under the
juvenile justice system; and
(5) it is in the best interests of the safety and welfare
of the community that the child stand trial as an
adult.

A challenge to the waiver of a juvenile matter to adult court may be challenged on direct appeal following a final determination of the criminal prosecution which was authorized by said waiver. *State ex rel. Snellgrove v. Porter Circuit and Juvenile Courts*, 270 Ind. 431, 433-34, 386 N.E.2d 680, 680-81 (1979).

[19] "Juvenile proceedings, unlike criminal proceedings, are civil in nature and the burden is on the State to establish by a preponderance of the evidence that juvenile jurisdiction should be waived." *Phelps v. State*, 969 N.E.2d 1009, 1016 (Ind. Ct. App. 2012) (citing *K.M. v. State*, 804 N.E.2d 305, 308 (Ind. Ct. App. 2004), *trans. denied*). "We review the juvenile court's decision to waive its jurisdiction for an abuse of discretion." *Id.* (citing *K.M.*, 804 N.E.2d at 308). "The juvenile court is entitled to give the evidence before it whatever weight it deems appropriate." *Phelps*, 969 N.E.2d at 1016 (citing *K.M.*, 804 N.E.2d at 308). Further,

[w]hen reviewing a claim [challenging] the sufficiency of a
waiver order, we will not weigh the evidence or judge the

credibility of witnesses. We look only to the evidence most favorable to the [S]tate and reasonable inferences to be drawn therefrom, considering both the waiver hearing and the findings of fact given by the court. *Goad v. State* (1987), Ind., 516 N.E.2d 26, 27; *Smith v. State* (1984), Ind., 459 N.E.2d 355, 360; *McDowell v. State* (1983), Ind., 456 N.E.2d 713, 715. Furthermore, the waiver order and record must allow a meaningful review which is not based on assumptions about the state of mind of the judge. *Cartwright v. State* (1976), 168 Ind. App. 517, 344 N.E.2d 83, 87.

*Thomas v. State*, 562 N.E.2d 43, 45-46 (Ind. Ct. App. 1990).

[20] In arguing that the juvenile court erred in waiving its jurisdiction, Willhite challenges the sufficiency of the juvenile court's waiver order. In making this challenge, Willhite relies on this court's opinion in *Duvall v. State*, 170 Ind. App. 473, 477, 353 N.E.2d 478, 481 (1976), in which we concluded as follows:

> Although the exclusive jurisdiction of the Juvenile Court inures to the benefit of the juvenile, it is nevertheless the court's jurisdiction. Thus, a 'stipulation' or consent to waiver of juvenile jurisdiction does not relieve the Juvenile Court from its duty to independently and conscientiously determine the appropriateness of waiver.

However, the Indiana Supreme Court has since held that

> The absence from the waiver order of the particular facts justifying waiver does not necessarily invalidate the waiver. This Court has recognized that the specific facts need not be recited in the order if the record contains sufficient facts for the court to find that waiver is appropriate. *Daniel v. State* (1991), Ind., 582 N.E.2d 364, 368; [*Gerrick v. State*, 451 N.E.2d 327, 330 (Ind.

> 1983)].  *See also* [*Thomas*, 562 N.E.2d at 45] (pre-printed waiver
> order is valid if the record from the hearing supports the waiver).

*Vance v. State*, 640 N.E.2d 51, 57 (Ind. 1994).

[21]    In *Thomas*, we reviewed the sufficiency of a waiver order, concluding that "although reciting statutory standards, [the waiver order] is supported by a record which demonstrates that the court made a conscientious determination that the case should not be handled in the juvenile system."  562 N.E.2d at 46. In reaching this conclusion, we stated that the record showed that the juvenile court contemplated evidence that Thomas was charged with murder and felony murder, that probable cause existed, and that she was fourteen years old when the crime was committed.  *Id*.  As such, we found that the record demonstrated that Thomas's "due process rights were accorded during the waiver hearing." *Id*.

[22]    Similarly, in the instant matter, the juvenile court's order does not include explicit findings with regard to each of the required factors.  However, the record is clear that the juvenile court conducted a hearing that was somewhat akin to a guilty plea hearing during which the parties presented the terms of their agreement and the juvenile court questioned Willhite about his understanding of the terms and whether he agreed to have the matter waived to adult court.  During this hearing, the parties established that (1) Willhite was alleged to have committed what would be Class B felony child molesting, (2) he had agreed to be waived to adult court in exchange for the State agreeing to charge him with a Class C felony child molesting, and (3) the parties agreed

that the criminal charges would result in written disposition after which any executed sentence would be capped at four years. The court record also included information by which the court could determine that Willhite, who was twenty-one years old at the time of the waiver hearing, was fourteen years old when he committed the alleged offense. Further, we believe that it is reasonable to infer that the juvenile court determined that the molestation of a child, such to warrant a Class B felony charge if committed by an adult, was heinous.[1]

[23] Like in *Thomas*, we conclude that although the juvenile court's waiver order did not expressly state the court's findings, the record showed that the juvenile court considered each of the necessary factors before waiving the matter to adult court.[2] As such, given the information available to the juvenile court

---

[1] In addition, while it is unclear whether the juvenile court record included information about Willhite's criminal history, it is not unreasonable to assume that the juvenile court record would have included this information. This information would have shown that after committing the underlying molestation but before the waiver hearing, Willhite had been charged with Class C felony child molesting in Blackford County. Willhite's criminal history would also have indicated that he had been adjudicated delinquent for being truant and committing what would have been theft if committed by an adult and convicted of possession of marijuana and operating a vehicle while intoxicated in a manner that endangers a person. The subsequent molestation charge would, at least potentially, indicate that Willhite had been alleged to have engaged in an unrelated act of sexual misconduct and his entire criminal history would, at least potentially, indicate that Willhite had engaged in a pattern of delinquent behavior.

[2] We are also unconvinced by Willhite's claim that the juvenile court could not have gleaned the necessary information from the waiver hearing simply because it was short. As we stated above, the juvenile court could find all necessary information from review of its record together with the information provided during the waiver hearing.

coupled with Willhite's express statement that he agreed to have the matter waived to adult court, we conclude that the juvenile court did not err in waiving its jurisdiction over the underlying matter.

[24] Having concluded that the juvenile court did not err in waiving its jurisdiction over the underlying matter, we also conclude that there is no question that the trial court, *i.e.* the Wells Circuit Court, had jurisdiction over the Class C felony charge that was brought in adult court. A court has subject matter jurisdiction over a matter if the court has "jurisdiction over the general class of actions to which a particular case belongs." *K.S. v. State*, 849 N.E.2d 538, 542 (Ind. 2006). Relevant statutory authority provides that all circuit courts have "original and concurrent jurisdiction in all civil cases and in all criminal cases." Ind. Code section 33-28-1-2. Thus, in light of the above-quoted statutory authority, we conclude that the trial court had subject matter jurisdiction over the underlying criminal proceedings.

## II. Ineffective Assistance of Counsel

[25] Willhite also contends that both his juvenile and trial counsel provided ineffective assistance. The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any

claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The United States Supreme Court has held that the two-part test set forth in *Strickland* applies to challenges to guilty pleas based on alleged ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

[26] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*.

[27] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*.

A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

## A. Juvenile Counsel

Willhite argues that his juvenile counsel provided him with ineffective assistance by failing to complete an adequate investigation into whether he was thirteen or fourteen years old when he committed the alleged misconduct. Specifically, Willhite claims that juvenile counsel's failure to complete an adequate investigation erroneously led juvenile counsel to believe that waiver was a forgone conclusion and, as a result, juvenile counsel erroneously "induced" and "coerced" Willhite to agree to the waiver and to subsequently plead guilty. Appellant's Br. p. 21. For its part, the State argues that juvenile counsel did not provide Willhite with ineffective assistance as juvenile counsel's investigation was adequate.

During the post-conviction hearing, Willhite's post-conviction counsel questioned juvenile counsel regarding the investigation conducted by juvenile counsel, engaging juvenile counsel in the following exchange:

> Q. And do you remember the work that you did or the investigation that you did on the case?
> A. I remember it better now because I do have my notes….
> Q. And you've had a chance to review that?

A. That's correct.

Q. What do you remember with respect to any investigation you might have done?

A. I would have filed discovery as far as the juvenile case itself. I believe I met with Mr. Willhite on several occasions and also telephone conference. I would have questioned the Probation Officer and also the police officer. I don't think I did any formal discovery in way of deposition or anything of that fashion.

Q. Do you remember reviewing the police report?

A. Absolutely.

Q. Do you remember if you talked to Detective Cale?

A. I did.

Q. Do you remember reading that the Detective had taken an audio tape statement of the victim?

A. I don't remember that.

Q. Would you have reviewed or do you recall reviewing that statement?

A. I did not have a copy of the audio statement in my file. Normally, if I would have reviewed that it would have been at the Prosecutor's Office. I did that frequently. I can't tell you that I remember specifically doing it in this case.

Q. Did you meet with Mr. Willhite to discuss the allegation?

A. I did.

Q. Do you remember the nature of that conversation?

A. It was more than once. The first time I met with him I believe he told me he thought he was 13. The police report from the victim thought or at least what she said was it would have been the summer of 2002 and Mr. Willhite would have turned 14 in March of 2002. We went at a later date also went through and I saw in my notes where he thought that they had left Bluffton in May of 2002. Again, that didn't place him outside of prior to March of 2002 or March 18th, which is his birthday. There was also a written statement that I believe Office Cale had written out for Mr. Willhite where under oath he said he was 14 and the victim was 10. That posed some additional problems for me as

far as giving further advice to Mr. Willhite as to going forward on a waiver issue.

PCR Tr. pp. 4-5. Juvenile counsel also indicated that he explained to Willhite the risk of going forward to the waiver hearing and the possible criminal sanctions that he could face if waived to adult court.

[30] On cross examination, the Deputy Prosecutor engaged juvenile counsel in the following exchange with regard to juvenile counsel's review of the victim's recorded statement:

Q. With respect to the audio taped interview, you say you did not have a copy of it in your file? Is that correct?
A. When Mr. Johnson from the Endris firm brought that file over the date we had our deposition there was no audio tape in the file.
Q. Do any of your notes reflect ever having that in your file?
A. I would have to go over my notes with a fine tooth comb but I don't believe so.
Q. How long had you been a public defender by this time?
A. Okay, I started as a public defender I think in 1990, so 2007, that would have been 17 years.
Q. And was it your habit in the regular course to review all materials provided to you or made available to you by the Prosecutor's Office?
A. Well, I always filed a Motion for Discovery so that right was protected and yes, if there was something to review, I would review it.
Q. And if they weren't made physically available to you because of the nature of the information but would have been made available to you to review at the Prosecutor's Office was it your normal procedure and habit to do that?
A. Absolutely and I'll expand a little bit on that. About this time there was a lot more DVDs and things like that coming

forward and so in this case there wasn't a video tape but many [types] of programming on one computer not jiving with another computer I'd go to the Prosecutor's Office and watch it or listen to it on a Prosecutor's computer.

Q:     Do you believe that is what you did in this case?

A.     I don't have any direct recollection of that, [Deputy Prosecutor]. I would expect that, yes, that's what I would have done.

Q.     Based on your habit and normal course of conduct?

A.     That's correct.

PCR Tr. pp. 7-8.

[31]  Juvenile counsel's additional testimony indicates that even if he did not review S.M.'s recorded statement, her grandmother's death certificate,[3] or the eviction notice, he was nonetheless aware that there was some question as to whether Willhite was thirteen or fourteen when he committed the alleged misconduct. Juvenile counsel acknowledged, however, that despite Willhite claiming that he "thought" he was thirteen, Willhite's own sworn statement to Detective Cale indicated that he was fourteen at the time he committed the alleged misconduct. Juvenile counsel further acknowledged that this sworn statement would have been problematic if he were to attempt to argue that waiver was inappropriate because of Willhite's age at the time he committed the alleged misconduct. Further, neither the recorded statement, death certificate, nor eviction notice would have directly contradicted Willhite's own sworn

---

[3]  S.M.'s grandmother's death certificate was relevant because S.M. indicated that the molestation occurred after her grandmother passed away.

statement that he was fourteen when he committed the alleged misconduct. Thus, given the victim's statement contained in the police report together with Willhite's sworn statement that he was fourteen when he committed the alleged misconduct, the record does not support Willhite's claim that review of the recorded statement, death certificate, or eviction notice would have enabled juvenile counsel to successfully challenge the State's waiver motion. We therefore conclude that Willhite has failed to establish that he was prejudiced by juvenile counsel's alleged failure to fully investigate the matter.

[32] Furthermore, recognizing that Willhite's sworn statement would have made it difficult to convince the juvenile court that Willhite was not old enough to be waived to adult court, juvenile counsel made the tactical decision to enter into negotiations with the State in an attempt to limit the potential criminal penalties to which Willhite would be exposed once in adult court. Given the information available to juvenile counsel, we cannot say that this approach was unreasonable. We will therefore defer to juvenile counsel's strategic and tactical decisions in this regard. *See Smith*, 765 N.E.2d at 585. Willhite has failed to establish that he received ineffective assistance from his juvenile counsel.

## B. Trial Counsel

[33] Willhite also claims that his trial counsel provided him with ineffective assistance. In making this claim, Willhite acknowledges that trial counsel filed a motion to dismiss the matter, but argues that trial counsel was ineffective for basing the arguments contained in this motion on a claim that prosecution was

barred by the applicable statute of limitations rather than jurisdictional grounds. As is discussed above, the juvenile court did not err in waiving its jurisdiction and the trial court had subject matter jurisdiction over the criminal proceedings. As such, any challenge on jurisdictional grounds would have been fruitless and without merit. Willhite, therefore, has failed to establish that he received ineffective assistance from his trial counsel as he failed to prove either that his trial counsel provided deficient representation or that the alleged deficient performance resulted in prejudice.

## III. Admission of Evidence

[34] Willhite last contends that the post-conviction court abused its discretion in excluding certain evidence. "The Indiana Rules of Procedure for Post-Conviction Remedies provide in relevant part that '[t]he court may receive affidavits, depositions, oral testimony, or other evidence.'" *Conner v. State*, 711 N.E.2d 1238, 1258 (Ind. 1999) (quoting Ind. Post-Conviction Rule 1(5)). Because the admission or exclusion of evidence is within the post-conviction court's sound discretion, a reviewing court defers to the post-conviction court and will not disturb its ruling on review unless the trial court abused its discretion. *Id*. (citing *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997)). We will find that a post-conviction court has abused its discretion if its decision is against the logic and effect of the facts and circumstances before it. *Pannell v. State*, 36 N.E.3d 477, 486 (Ind. Ct. App. 2015), *trans. denied*.

[35] Willhite argues that the post-conviction court abused its discretion by excluding three proffered exhibits, *i.e.* the eviction order, a copy of the audiotaped statement S.M. gave to Detective Cale, and a certified copy of S.M.'s grandmother's death certificate, from evidence. The State objected to the admission of each of the exhibits on relevancy grounds. In arguing on appeal that the challenged exhibits were relevant, Willhite claims that "[a]ll three exhibits were relevant because they provided proof that Willhite had a strong defense to waiver to adult court. In fact, the exhibits showed that Willhite was not eligible for waiver to adult court, based on his age at the time that the sex acts took place." Appellant's Br. p. 17.

[36] The record demonstrates that Willhite proffered the exhibits in support of his claim that the juvenile court erred in waiving its jurisdiction over the underlying matter and that his juvenile court counsel failed to adequately investigate and present a defense to the State's request to waive the matter to adult court. As is discussed above, our review of the record demonstrates that the juvenile court did not err in waiving its jurisdiction over the underlying matter and Willhite's juvenile counsel did not provide ineffective assistance. Review of the record also indicates that while the post-conviction court excluded the documents, it appears that the post-conviction court considered the facts contained therein. The contents of the proffered exhibits were discussed by the parties and witnesses during the evidentiary hearing in connection to Willhite's post-conviction claims.

[37] In addition, the post-conviction court took judicial notice of all related court records, including the court records of the juvenile and trial court. The eviction notice had been entered into the record below and it appears that the facts contained in the eviction notice, the recorded statement, and the death certificate were discussed by the parties below. Further, even if the post-conviction court did not consider the facts contained in these documents, the exclusion of these documents was harmless because neither the recorded statement, death certificate, nor eviction notice would have directly contradicted either Willhite's own sworn statement that he was fourteen when he committed the alleged misconduct or the victim's statement indicating that the alleged misconduct occurred when she was ten years old and Willhite was fourteen years old.

[38] Willhite has failed to show how admission of the actual exhibits, the contents of which were not at issue, would have bolstered either his claim that the juvenile court erred in waiving the underlying matter to adult court or that he received ineffective assistance from his juvenile counsel. As such, we conclude that the exclusion of these exhibits was, at most, harmless. We further conclude, therefore, that the post-conviction court did not abuse its discretion in this regard.

# Conclusion

[39] In sum, we conclude that (1) the juvenile court did not err in waiving the underlying matter to adult court, (2) Willhite did not receive ineffective

assistance from either juvenile or trial counsel, and (3) the post-conviction court did not abuse its discretion in excluding certain evidence from the evidentiary hearing.

[40] The judgment of the post-conviction court is affirmed.

Pyle, J., and Altice, J., concur.